IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SOUTHERN ILLINOIS STORM SHELTERS**,

**Plaintiff/Counterclaim Defendant,**

v.                                                                                      No. 13-0297-DRH

**4SEMO.COM, INC.,**

**Defendant/Counterclaimant,**

v.

**INGOLDSBY EXCAVATING, INC.,**

**Additional Counterclaim Defendant.**

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### Introduction and Background

Now before the Court is defendant/counterclaimant 4Semo.com, Inc.'s motion to dismiss plaintiff's amended complaint (Doc. 36). 4Semo.com argues that plaintiff's amended complaint should be dismissed in its entirety pursuant to Federal Rules of Civil Procedure 10(b) and 12(b)(6) for failure to state a claim. Plaintiff opposes the motion (Doc. 43). Based on the following, the Court **DENIES** the motion.

On July 2, 2013, plaintiff, Southern Illinois Storm Shelters, Inc., filed an

amended complaint for trademark infringement, unfair competition, cybersquatting, deceptive trade practices and intentional tortious interference with contractual relations against 4Semo.com, Inc. (Doc. 34). The amended complaint contains seven counts: Count I – Federal Unfair Competition Violation of Section 43(a) of the Lanham Act; Count II – Federal Trademark Infringement Violation of Section 43(a) of the Lanham Act; Count III – Cybersquatting in Violation of the Anti-Cybersquatting Consumer Protection Act; Count IV – Violation of the Illinois Uniform Deceptive Trade Practices Act; Count V – Violation of Illinois Trademark Registration and Protection Act and Common Law; Count VI – Violation of the Common Law of Unfair Competition and Count VII - Common Law Intentional Tortious Interference with Contractual Relations. Plaintiff is in the business of designing, manufacturing and selling fiberglass storm shelters and above ground metal safe rooms. Defendant is in the business of providing general contracting work and is also a dealer of storm shelters. Plaintiff alleges that, despite knowledge of plaintiff's extensive use and substantial common law rights in the marks "Southern Illinois Storm Shelters" and "Lifesaver Storm Shelters," defendant has attempted to register and use confusingly similar or identical terms and domain names in connection with similar services in competition with plaintiff and in violation of plaintiff's intellectual property rights. Plaintiff's lawsuit stems from defendant's infringement of the marks through defendant's website, related advertisements and on products not manufactured by the plaintiff and defendant's purchase of domain names identical or related to the marks.

On October 28, 2013, defendant filed an amended counterclaim against plaintiff and Ingoldsby Excavating, Inc. (Doc. 55). The amended counterclaim contains twelve counts: Count I - Trademark Infringement; Count II – Trademark Dilution; Count III – Violation of the Lanham Act, 15 U.S.C. § 1225, et seq., For False Advertising, False Endorsement, and/or Unfair Competition; Count IV – Common Law Unfair Competition; Count V – Violation of Illinois Uniform Deceptive Trade Practices Act; Count VI – Violation of Illinois State Trademark Registration and Protection Act/Common Law Trademark Infringement; Count VII – Misappropriation of Time and Investment; Count VIII – Breach of Contract; Count IX – Unjust Enrichment; Count X – Civil Conspiracy; Count XI – Fraud and Count XII – Cybersquatting in Violation of the Anti-Cybersquatting Consumer Protection Act. 4Semo.com alleges that it conceived, created and developed the LifeSaver Storm Shelters mark at its own cost and on its own initiative to indicate the retail source of the shelters it sold and installed. 4Semo.com also alleges that plaintiff, as a supplier to 4Semo.com, learned of 4Semo.com's marks from 4Semo.com and eventually asked 4Semo.com if it could use the 4Semo.com marks in Southern Illinois and 4Semo.com agreed to that limited use. 4Semo.com also alleges that plaintiff and Ingoldsby Excavating moved beyond the approved use and that plaintiff had started using the marks when selling to their other dealers and had purported to license their other dealers to the marks.

On July 19, 2013, defendant filed the motion to dismiss stating that plaintiff filed this action "as a tactical, preemptive maneuver, designed to derail 4SEMO's

proper registration of 4SEMO's Lifesaver Storm Shelters trademark with the United States Patent and Trademark Office." (Doc. 37, ps. 1-2). Defendant moves to dismiss plaintiff's amended complaint in its entirety. Plaintiff opposes the motion. As the motion is ripe, the Court addresses the merits.

## **Standards**

Rule 10(b) requires that a party limit its claims and defenses "as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." Fed.R.Civ.P. 10(b); *see Frederisksen v. City of Lockport,* 384 F .3d 437, 438 (7th Cir. 2004). The purpose of Rule 10(b), in conjunction with Rule 8, is to "give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren,* 658 F.3d 792, 797 (7th Cir. 2011) (citations omitted). Accordingly, dismissal is appropriate where a complaint is so unintelligible that the defendant cannot reasonably be expected to be on notice of the plaintiff's claims. *Id.* at 798 ("[T]he issue is notice; where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful act, dismissal is an appropriate remedy."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1376 (3d ed. 1998) ("Rule 10(b) is designed to improve the intelligibility of pleadings.").

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank Nevada, N.A.,* 507

F.3d 614, 618 (7th Cir. 2007)(citing *Savory v. Lyons,* 469 F.3d at 667, 670 (7th Cir. 2006)); *accord Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true ... 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 678.

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)(quoting *EEOC v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007)). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

Second, to survive a motion to dismiss, the court determines whether the well-pleaded allegations, if true, "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Iqbal* 556 U.S. at 679; *Concentra,* 496

F.3d at 776. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 556 U.S. at 678. "The plausibility standard ... asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (internal quotation marks omitted). " 'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Rather, *Twombly* and *Iqbal* require "the plaintiff to 'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). Though the "degree of specificity required is not easily quantified, ... 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.' " *Id.* (quoting *Swanson,* 614 F.3d at 404). If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Concentra,* 496 F.3d at 776. Accordingly, a motion to dismiss may be properly granted where the plaintiff does not allege a plausible entitlement to relief either by (1) failing to provide the defendant with notice of plausible claims against it or (2) asserting only speculative or conclusory allegations in the complaint.

## Analysis

First, defendants argue that plaintiff's amended complaint fails to plead separate allegations as to wrongful activities to each phrase it claims as a mark. Instead, defendant maintains that plaintiff lumped them together as "the marks" and referred vaguely to the bunched phrase. The Court disagrees with defendant's assessment of plaintiff's amended complaint. In fact, plaintiff's amended complaint is intelligible and coherent. The amended complaint states all of its claims and allegations in separate numbered paragraphs. The amended complaint begins with sections setting forth the nature of the case, jurisdiction and venue and the parties. Thereafter, there is a section titled "Factual Background" which contains allegations that are "common to all claims." That portion of the amended complaint is eventually followed by the individual counts setting forth its claims against defendant. The amended complaint adequately puts defendant on notice as to its claims. Accordingly, dismissal pursuant to Rule 10(b) is not necessary and would only serve to further delay this case. The Court denies the motion on this basis. The Court turns now to address defendant's Rule 12(b)(6) arguments.

"Congress passed the Lanham Act in 1946 to 'federalize' existing common law protection of trademarks used in interstate commerce. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant:

> [W]ithout the consent of the registrant … use[s] in commerce any reproduction, counterfeit, copy or colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). The Lanham Act further imposes liability upon:

> Any person who, or in connection with any goods or services … uses in commerce any … false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or other association of such person with another person, or as to origin, sponsorship, or approval of his or her goods … by another person.

15 U.S.C. § 1125(a)(1)(A).

**Counts I and VI – Federal and State Unfair Competition Claims**

Claims brought under 15 U.S.C. § 1125(a) are of two types: "likelihood of confusion" claims under § 1125(a)(1)(A) and "false advertising" claims under § 1125(a)(1)(B). To state a claim for false advertising under § 1125(a), a plaintiff must allege: (1) that the defendant made a false statement of fact about its own or another product in commercial advertisement; (2) that the statement deceived or has the tendency to deceive a substantial portion of those persons who perceive the advertisement; (3) that the deception is likely to influence purchasing decisions; (4) that the defendant caused the advertisement to enter interstate commerce; and (5) a likelihood of injury. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). On the other hand, a claim that defendant's use of a mark is likely to cause confusion "a plaintiff must show (1) that its trademark may be protected and (2)

that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff."

Further, in Illinois, the common law tort of unfair competition encompasses a broad spectrum of law and it is difficult to determine exactly what elements are required in order to prove such a claim. *See Wilson v. Electro Marine Sys. Inc.*, 915 F.2d 1110, 1118 (7th Cir. 1990)("[T]the law of unfair competition … is elusive; its elements escape definition."). Under Illinois law, "[u]nfair competition is a broader concept than trademark infringement and depends upon likelihood of confusion as to the source of plaintiff's goods than the whole product, rather than just the service mark, is considered." *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill.App.3d 99, 466 N.E.2d 1004, 1015 (Ill. App. 1984). However, "[t]he same set of facts and circumstances may be used to support a claim for both trademark infringement and unfair competition, and a finding in favor of the former claim typically results in a finding for the latter." *Id*.

First, defendant argues that Counts I and VI should be dismissed with prejudice because the phrase Southern Illinois Storm Shelters is not a protectable trademark because it is merely a descriptive term and that such phrases are not subject to registration as trademarks. Plaintiff argues that Southern Illinois Storm Shelters is more than merely descriptive as it has acquired a secondary meaning. Specifically, plaintiff counters that the consuming public identifies Southern Illinois Storm Shelters as the single source of storm shelters under the mark and is protectable. The Court agrees with plaintiff.

"The validity of a mark pertains to whether a 'word, term, name, symbol or device,' 15 U.S.C. § 1125(a)(1), is entitled to protection under trademark law by focusing on whether that mark specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). When the mark at issue is not registered with the United States Patent and Trademark Office, "the burden is on the claimant" to establish that it is entitled to protection. *Id.* at 727 (citing *Mil–Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996)).

Marks are classified into five categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). Generic marks are commonly used, do not identify a particular source and are entitled to no trademark protection. *Id.* Descriptive marks are those that describe "the ingredients, qualities, or characteristics of an article of trade or a service." *Id.* (quoting *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir .1986)). They do not generally receive trademark protection, but may if they acquire secondary meaning "in the collective consciousness of the relevant community." *Id.* (quoting *Mil–Mar Shoe Co.,* 75 F.3d at 1157). Finally, suggestive, arbitrary or fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Two Pesos,* 505 U.S. at 768.

Secondary meaning arises when a mark "has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001). In determining whether a mark has acquired secondary meaning, the Seventh Circuit considers seven factors: (a) direct consumer testimony; (b) consumer surveys; (c) exclusivity, length and manner of use; (d) amount and manner of advertising; (e) amount of sales and number of customers; (f) established place in the market; and (g) proof of intentional copying. *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1267 (7th Cir.1989).

Here, plaintiff alleges: "Since long before the acts of Defendant described herein, Plaintiff has, since at least as early as 2000, continuously used the mark 'Southern Illinois Storm Shelters' in connection with the marketing and dale of Shelters to customers in Illinois and throughout the United States and this mark is Plaintiff's registered business name in Illinois." (Doc. 34, ¶ 8a). Further, plaintiff alleges: "As a result of Plaintiff's extensive sales, marketing, and advertising expenditures, and unsolicited media mentions related to Plaintiff's Lifesaver Storm Shelters products, Plaintiff has become well-known among the relevant consuming public as the single source of storm shelters marketed under the Lifesaver Storm Shelters mark, which has become synonymous with the Southern Illinois Storm Shelters mark." (Doc. 34, ¶ 8g.). At this stage of the litigation, the Court finds that plaintiff has sufficiently pled a protectable trademark regarding Southern Illinois

Storm Shelters to withstand dismissal. Thus, the Court denies defendant's motion.

Next, defendant argues that Counts I and VI should be dismissed because the amended complaint alleges that 4Semo.com is a reseller of its products and thus not a competitor and those counts also fail to allege facts that establish that 4Semo.com's actions are not "unfair." Plaintiff counters that it has alleged unfair competition in that 4Semo.com knowingly exceed its authorization to use the marks as a reseller thereby unfairly competed with plaintiff in areas outside 4Semo.com was allowed to sell. The Court agrees with plaintiff.

The amended complaint alleges: "Plaintiff has never authorized, licensed or otherwise permitted the Defendant to use Plaintiff's marks, other than in connection with the sale of Plaintiff's Shelters. Without any authorization, license or authority from Plaintiff, Defendant has marketed and advertised Plaintiff's mark 'Lifesaver Storm Shelters' on its website. On or about August 9th, 2011, Defendant purchased the domain names www.lifesaverstormshelter.com and www.southernillinoisstormshelter.com. Both of the aforementioned domain names redirect consumers to Defendant's website www.4semo.com." (Doc. 34, ¶¶ 9a-9d). Further, the amended complaint alleges: "Defendant's adoption and the use of Plaintiff's name and marks, as hereinabove pleaded, constitutes use of a false designation of origin or a false representation, which falsely designates, describes or represents the Defendant's services and business as originating from or being in connection with Plaintiff, which is not the case, and thereby constitutes false description or representation used in interstate commerce." (Doc. 34, ¶ 15).

Based on these allegations, the Court finds that plaintiff has sufficiently pled claims of unfair competition under both Federal and Illinois State law. Thus, the Court denies the motion on this ground.

### Counts II and V – Federal and State Trademark Infringement Claims

In order to prevail on a claim of trademark infringement and counterfeiting under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must prove two elements. *See* 15 U.S.C. § 1125(a); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *CAE*, 267 F.3d at 673-74. First, the plaintiff must show that "its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, the plaintiff must allege that the challenged mark is "likely to cause confusion among consumers." *Id*. However, "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant a prima facie protection as a trademark." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir. 1986).

Further, Illinois state law also provides for a cause of action under the Illinois Trademark Registration and Protection Act against any person who:

> uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this Act in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

765 ILCS 1036/60.

The purpose of the trademark "is to provide the consuming public with a

concise and unequivocal signal of the trademarked product's source and character." *Draeger Oil, Inc. v. Uno-Ven Co.*, 314 F.3d 229, 301 (7th Cir. 2002). However, this "function is thwarted if the quality and uniformity of the trademarked product are allowed to vary significantly without notice to the consumer." *Id.*

Defendants argue that the use of the phrase "Southern Illinois Storm Shelters" merely as a website director is not the use of the phrase in a trademark manner by 4Semo.com as a matter of law. Plaintiff opposes the motion arguing that the use of a phrase as a redirector or for a website is the use of a phrase in a trademark manner. The Court agrees with the plaintiff.

The amended complaint properly alleges that the marks "Southern Illinois Storm Shelters" and "Lifesaver Storm Shelters" were improperly registered and used by 4Semo.com in a manner to redirect customers to its website. At this stage of the pleadings, the Court finds that plaintiff has alleged that this was the use of a phrase in a trademark manner and has stated claims for infringement in these two counts.

**Count III - Cybersquatting Claim**

Under the ACPA, a person alleged to be a cybersquatter is liable to the owner of a protected mark, "without regard to the goods or services of the parties" if that person (1) "has a bad faith intent to profit from that mark, including a personal name which is protected under this section;" and (2) registers, traffics in, or uses a domain name that is identical or confusingly similar to or dilutive of a mark that is distinctive or famous. *See* 15 U.S.C. § 1125(d)(1)(A). The ACDP was enacted, in

part, to address counterfeit sellers, who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Lucas Nursery and Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004)(quoting S.Rep. No. 106-140, at 5-6).

As to the cybersquatting count, the Court finds that plaintiff properly has alleged that both Southern Illinois Storm Shelters and Lifesaver Storm Shelters are distinctive marks entitled to protection; that 4Semo.com used a domain name that was confusingly similar to plaintiff's marks and that 4Semo.com had a bad faith intent to profit from plaintiff's marks. As stated previously, the amended complaint alleges that the mark "Southern Illinois Storm Shelters" has been used since at least as early as 2000 and the mark "Lifesaver Storm Shelters" has been used since at least as early as 2002 and that the average annual sales from the shelters is around $1.2 million. (Doc. 34, ¶ 8a-8c). Also, the amended complaint alleges that plaintiff has extensive marketing expenditures, received substantial media attention and has a well-known reputation and dealership network. Further, the amended complaint alleges that 4Semo.com had a bad faith intent to profit from plaintiff's marks, that it is the true owner of the marks and that 4Semo.com has no rights to the marks. The amended complaint also alleges that 4Semo.com intentionally diverted customers from plaintiff's online location to their homepage www.4Semo.com and that conduct is harming the goodwill represented by the mark. (Doc. 34, ¶ 25). Once again, the Court denies defendant's motion as

plaintiff has sufficiently pled its claim for cybersquatting.

### Count IV – Illinois Uniform Deceptive Trade Practices Act Claim

The Illinois Uniform Deceptive Trade Practices Act ("DTPA") provides that "[a] person engages in a deceptive trade practice when … the person: … causes a likelihood of confusion or misunderstanding as to the source, sponsorship … [etc.]." 815 ILCS 510/2(a)(2). Certain fraudulent conduct—using deceptive representations about the source or quality of the goods, for example—also violates the DTPA. *See, e.g.,* 815 ILCS 510/2(a)(4)-(6).

As to Count IV, defendant argues that plaintiffs admit defendant is a dealer/distributor of its products and, thus, there can be no deception. Plaintiff maintains that 4Semo.com's use of the marks was unauthorized and that this unauthorized use was in connection with the services similar to plaintiff's services and thus deceives the public. The Court agrees with plaintiffs. The allegations contained in the amended complaint are sufficient to state a cause of action under the Illinois Deceptive Trade Practices Act. Thus, the Court denies the motion to dismiss as to this claim.

### Count VII – Intentional Tortious Interference with Contractual Relations Claim

Lastly, defendant argues that plaintiff's intentional tortious interference with contractual relations fails to allege that there was a contract, a breach of contract, or that 4SEMO.com's actions were unjustified. Plaintiff counters that it has set

forth sufficient facts to state a claim for tortious interference with contractual relations. The Court agrees with plaintiff and finds that at this stage in the pleadings plaintiff's claim survives dismissal.

To establish tortious interference with contractual rights, plaintiff must allege: "(1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages." *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005); *Complete Conference v. Kumon North America*, 915 N.E.2d 88 (Ill. App. 2009).

Here, the Court finds that plaintiff has alleged the elements to state a claim for intentional tortious interference with contractual relations. As to elements 1 and 2, plaintiff alleges: "Plaintiff has valid and enforceable contractual relationships with dealers throughout the United States and the Defendant is fully aware of said relationships" and that 4SEMO.com sent letters to dealers (Doc. 34, ¶¶ 46, 47). Clearly, elements 1 and 2 have been alleged sufficiently. As to element 3, the amended complaint alleges that 4SEMO.com never contacted the dealers prior to the May 28th letter and that plaintiff believes that defendant's sole motivation for sending the letter was to retaliate against plaintiff for filing suit. (Doc. 34, ¶¶ 48 & 49). Lastly, Count VII alleges that defendant intentionally caused irreparable harm to plaintiff's business by inducing the dealers to breach their contract with plaintiff. Plaintiff has pled sufficient facts to assert a claim for tortious interference with contractual relations.

**Conclusion**

Accordingly, the Court **DENIES** defendant's motion to dismiss amended complaint (Doc. 36).

**IT IS SO ORDERED.**

Signed this 22nd day of February, 2014.

Digitally signed by
David R. Herndon
Date: 2014.02.22
07:06:51 -06'00'

**Chief Judge
United States District Court**