IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SOUTHERN ILLINOIS STORM**
**SHELTERS, INC.,**

**Plaintiff/Counterclaim Defendant,**

**v.**                                                                    **No. 13-0297-DRH**

**4SEMO.COM, INC.,**

**Defendant/Counterclaimant,**

**v.**

**INGOLDSBY EXCAVATING, INC. and**
**BOB INGOLDSBY,**

**Additional Counterclaim Defendants.**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

**Introduction and Background[1]**

Now before the Court is defendant/counterclaimant 4SEMO.com, Inc.'s motion to for summary judgment (Doc. 111) and Southern Illinois Storm Shelters, Inc.'s motion to dismiss pursuant to Rule 41(a)(2) (Doc. 128).[2] Based on the pleadings and the applicable law, the Court **GRANTS** the motion for summary

---

1 A brief recitation of the litigation history is necessary.
2 As the parties are aware, the Court is addressing only the arguments as to Counts 1 and 2 of the amended complaint. On August 11, 2015, the Court adopted the Report and Recommendation (Doc. 147), granted the motion to dismiss with prejudice pursuant to Rule 42(a)(2) as to Counts 3 through 7 of the amended complaint, and deferred ruling on the motion to dismiss as to Counts 1 and 2 of the amended complaint (Doc. 149).

judgment as to Counts 1 and 2 of the amended complaint and **DENIES as moot** the motion to dismiss pursuant to Rule 42(a)(2) as to Counts 1 and 2 of the amended complaint.

On July 2, 2013, plaintiff, Southern Illinois Storm Shelters, Inc., filed an amended complaint for trademark infringement, unfair competition, cybersquatting, deceptive trade practices and intentional tortious interference with contractual relations against 4SEMO.com, Inc. (Doc. 34).   The amended complaint contains seven counts: Count I – Federal Unfair Competition Violation of Section 43(a) of the Lanham Act; Count II – Federal Trademark Infringement Violation of Section 43(a) of the Lanham Act; Count III – Cybersquatting in Violation of the Anti-Cybersquatting Consumer Protection Act; Count IV – Violation of the Illinois Uniform Deceptive Trade Practices Act; Count V – Violation of Illinois Trademark Registration and Protection Act and Common Law; Count VI – Violation of the Common Law of Unfair Competition and Count VII - Common Law Intentional Tortious Interference with Contractual Relations.   Plaintiff is in the business of designing, manufacturing and selling fiberglass storm shelters and above ground metal safe rooms.    Defendant is in the business of providing general contracting work and is also a dealer of storm shelters.    The amended complaint alleges that, despite knowledge of plaintiff's extensive use and substantial common law rights in the marks "Southern Illinois Storm Shelters" and "Lifesaver Storm Shelters," defendant has attempted to register and use confusingly similar or identical terms and domain names in connection with similar services in

competition with plaintiff and in violation of plaintiff's intellectual property rights. Plaintiff's lawsuit stems from defendant's alleged infringement of the marks through defendant's website, related advertisements and on products not manufactured by the plaintiff and defendant's purchase of domain names identical or related to the marks.

On October 28, 2013, defendant filed an amended counterclaim against plaintiff and Ingoldsby Excavating, Inc. (Doc. 55). The amended counterclaim contains twelve counts: Count I - Trademark Infringement; Count II – Trademark Dilution; Count III – Violation of the Lanham Act, 15 U.S.C. § 1225, et seq., For False Advertising, False Endorsement, and/or Unfair Competition; Count IV – Common Law Unfair Competition; Count V – Violation of Illinois Uniform Deceptive Trade Practices Act; Count VI – Violation of Illinois State Trademark Registration and Protection Act/Common Law Trademark Infringement; Count VII – Misappropriation of Time and Investment; Count VIII – Breach of Contract; Count IX – Unjust Enrichment; Count X – Civil Conspiracy; Count XI – Fraud and Count XII – Cybersquatting in Violation of the Anti-Cybersquatting Consumer Protection Act. 4SEMO.com alleges that it conceived, created and developed the LifeSaver Storm Shelters mark at its own cost and on its own initiative to indicate the retail source of the shelters it sold and installed. 4SEMO.com also alleges that plaintiff, as a supplier to 4SEMO.com, learned of 4SEMO.com's marks from 4SEMO.com and eventually asked 4SEMO.com if it could use the 4SEMO.com marks in Southern Illinois and 4SEMO.com agreed to that limited use. 4SEMO.com also

alleges that plaintiff and Ingoldsby Excavating moved beyond the approved use and that plaintiff had started using the marks when selling to their other dealers and had purported to license their other dealers to the marks.

On February 22, 2014, the Court denied 4SEMO.com's motion to dismiss (Doc. 68). After that time, discovery in this matter slowly progressed and the Court extended the discovery and scheduling deadlines on April 10, 2014 (Doc. 74). On June 6, 2014, 4SEMO.com, with consent, filed a second amended complaint adding Bob Ingoldsby as a counter defendant (Doc. 78). Subsequently, the Court granted another motion for extension of time and extended the scheduling and discovery deadlines another 90 days (Doc. 83). Thereafter, Magistrate Judge Williams granted another extension of time to complete discovery and again extended the discovery deadlines (Doc. 95).

On January 5, 2015, 4SEMO.com filed a motion to strike Southern Illinois Storm Shelter's claims for monetary damages (Doc. 103) and on January 21, 2015, 4SEMO.com filed the pending motion for summary judgment (Docs. 111, 112, and 113). On February 20, 2015, the Court granted the motion to strike and struck Southern Illinois Storm Shelter's claims for monetary damages finding that plaintiff as to the trademark claims voluntarily abandoned the monetary damages and finding as to the tortious interference claims that Southern Illinois failed to disclose any damages as required by Federal Rule of Civil Procedure 26 (Doc. 123). Six days later, Southern Illinois Storm Shelters filed a motion to dismiss pursuant to 41(a)(2) (Doc. 128). In that motion, plaintiff proposed certain conditions as to

the dismissal with prejudice of its amended complaint: (1) to dismiss with prejudice and without condition Counts 3 through 7 of the amended complaint; (2) to dismiss with prejudice, but with certain conditions Counts 1 and 2 of the amended complaint; and (3) in the alternative, to dismiss without prejudice Counts 1 and 2 of the amended complaint if the Court is unwilling to impose the requested conditions to the dismissal with prejudice.   4SEMO.com filed an opposition to the motion as to the conditions as to Counts 1 and 2 (Doc. 139).[3]

In an effort to streamline the pending issues, the Court referred the motion to dismiss and the motion for summary judgment to Magistrate Judge Williams "for the purpose of meeting with the parties and entering a Report and Recommendation on the terms and conditions of dismissal and to narrow the issues which the Court needs to decide as to the summary judgment motion as well as explore the possible resolution of the case." (Doc. 141).  On June 11, 2015, Magistrate Judge Williams entered the Report and Recommendation ("the Report")(Doc. 147) and on June 22, 2015, 4SEMO.com filed its objection to a portion of the Report (Doc. 148).   Thereafter, the Court entered a Memorandum and Order adopting the Report, granting in part the motion to dismiss with prejudice Counts 3 through 7 pursuant to Rule 42(a)(2), and deferring ruling on the motion to dismiss pursuant to Rule 42(a)(2) as to Counts 1 and 2 (Doc. 149). Thus, the Court now turns to address the motion for summary judgment as to

---

3  4SEMO.com joined in the request to dismiss with prejudice and without condition as to Counts 3 through 7 of the amended complaint (Doc. 139, p. 2).

Counts 1 and 2 of the amended complaint.

## Facts[4]

Southern Illinois Storm Shelters, Inc. ("Southern Illinois") is in the business of designing, manufacturing and selling fiberglass storm shelters and the installation of storm shelters.   Southern Illinois was incorporated in Illinois on September 6, 2000.   Southern Illinois is owned by Robert "Bob" Ingoldsby and is operated by Bob's brother, Scott Ingoldsby.   4SEMO.com, Inc. ("4SEMO.com") is a Missouri business, which among other things, sells storm shelters and operates in the residential and commercial construction industries.   Southern Illinois sells its storm shelters through a network of dealers.   4SEMO.com became a dealer of Southern Illinois on May 5, 2005.

4SEMO.com created a related mark, a logo comprised of a Greek cross with all arms of equal length, and embedded the "LifeSaver Storm Shelters" mark in the cross.   Southern Illinois does not claim any rights to the logo mark used by 4SEMO.com and admits that 4SEMO.com put the name "LifeSaver Storm Shelters" inside of a red Greek cross.

4SEMO.com applied to the United States Patent and Trademark Office ("USPTO") on January 11, 2012 for registration of the Lifesaver name and related logo mark.

Southern Illinois offered 4SEMO.com $40,000.00 for the right to use the Lifesaver mark prior to learning the red cross specimen submitted to the USPTO

---

4 These facts are agreed to and admitted to by the parties.

had been denied.

Southern Illinois purchased Life-Saver Storm Shelters, LLC ("LSS").   From at least May 5, 2005, Storm Shelters was aware that 4SEMO.com was using the name and logo marks in conjunction with its business and the sale of storm shelters.   According to Southern Illinois, 4SEMO.com, as a dealer of Southern Illinois, was authorized to use the phrase Southern Illinois Storm Shelters in conjunction with the sale of storm shelters manufactured by Southern Illinois. 4SEMO.com was allowed to do its own advertising using the Lifesaver Storm Shelter and Southern Illinois Storm Shelter names.   During this time frame that 4SEMO.com was a dealer of Southern Illinois, Southern Illinois was not aware of any advertising by 4SEMO.com that it found objectionable.

Southern Illinois has no evidence that 4SEMO.com sold any other product other than Southern Illinois products using the Southern Illinois Storm Shelters name.   While a dealer for Southern Illinois, 4SEMO.com was authorized to use the Lifesaver Storm Shelters name in conjunction with the sale of Southern Illinois Storm Shelter products.   Southern Illinois encourages its dealers to use the Lifesaver name.   Dealers of Southern Illinois have the right to use the phrase Southern Illinois Storm Shelters and the Lifesaver Storm Shelters mark when selling a storm shelter made by Southern Illinois.

4SEMO.com was given access to storm shelters and advertising materials containing the marks.   Southern Illinois provided marketing and advertising materials that were created by 4SEMO.com to its dealers, including materials that

contained the logo mark.   Southern Illinois is not aware of 4SEMO.com putting the name Southern Illinois Storm Shelters on any product other than one that was manufactured by Southern Illinois.   Southern Illinois terminated 4SEMO.com as a dealer on June 7, 2013; this was handled by Southern Illinois' attorneys.

Southern Illinois filed the complaint in this matter on March 25, 2013, which was later amended on July 2, 2013, in which it claims that 4SEMO.com infringed and used unfair competition in relation to the mark "Lifesaver Storm Shelters" and the phrase "Southern Illinois Storm Shelters."

According to Southern Illinois, Life-Saver Storm Shelters, LLC used the Lifesaver Storm Shelters mark in a signed Warranty Registration Card, a business card, and an envelope, with a cancelled stamp.   There is no evidence, facts, indication or anything else that shows John Grone or Lifesavers Storm Shelters, LLC, purchased or sold any storm shelters between 2005 and 2012.   Southern Illinois is not aware of any advertisement disseminated by John Grone or Lifesaver Storm Shelters, LLC, at any time between 2005 and 2012.   Southern Illinois is not aware of any brochure being handed out by John Grone or Lifesaver Storm Shelters, LLC, at any time between 2005 and 2012. Southern Illinois is not aware of John Grone of Lifesaver Storm Shelters, LLC, using the phrase Lifesaver Storm Shelters in any purpose between 2005 and 2012.   The last storm shelter that Lifesaver Storm Shelters, LCC, purchased for resale from Southern Illinois prior to the eventual purchase of the company by Southern Illinois in 2012, was in 2004. The sole remaining owner of Lifesaver Storm Shelters, LLC, prior to its purchase

by Southern Illinois, Linda Grone, responded to an email from Southern Illinois'
counsel inquiring about the purchase of the company that she thought the company
had been dissolved prior to the death of her husband.

Bob Ingoldsby, the President of Southern Illinois, is not sure whose idea it
was to use the Lifesaver mark in conjunction with the sales of storm shelters by
Southern Illinois and admits that neither he nor Scott came up with the Lifesaver
name.    Bob Ingoldsby admits that if the Lifesaver name was used under
permission by another, and that permission expired, it would not have the right to
use the Lifesaver name.   He also admits that if Southern Illinois had been using
the Lifesaver name without the legal right to do so, the fact that Southern Illinois
had used it for a such a long time would not allow them to continue to use it.

Southern Illinois does not own any dealer of its storm shelters in Illinois,
Missouri or Indiana other than Lifesaver Storm Shelters, LLC.   Lifesaver Storm
Shelters, LLC, was acquired by Southern Illinois based upon the advice of its
attorney. Lifesaver Storm Shelters, LLC, was purchased by Southern Illinois on
September 10, 2012 for $4,000.   Bob Ingoldsby estimates that the earliest that
Southern Illinois ever used the Lifesaver name was in 2005.   In 2005, Southern
Illinois was not using a Lifesaver shelter email address and was answering the
phones as Southern Illinois Storm Shelters.   Southern Illinois has done nothing
different as a result of 4SEMO.com's asserted ownership in the Lifesaver name,
and would have done nothing different if it had known earlier of 4SEMO.com's legal
claim to the Lifesaver Storm Shelters mark and logo.   Southern Illinois stopped

using the logo upon the denial of the red cross specimen by the USPTO and the break-down in negotiations between Southern Illinois and 4SEMO.com.

Southern Illinois is not aware of any confusion between Southern Illinois and 4SEMO.com or of any actual person whoever believed that anything 4SEMO.com did was actually being done by Southern Illinois or any confusion about the two companies.   Southern Illinois has no evidence, knowledge or facts that would establish that 4SEMO.com used the Southern Illinois name to sell any products other than those that are manufactured by Southern Illinois and has no knowledge of 4SEMO.com ever using the Southern Illinois Storm Shelters name in an attempt to claim that storm shelters or any product that sold came from Southern Illinois, when in fact it did not.   Southern Illinois is not aware of anyone who ever bought something from 4SEMO.com thinking they were buying it from Southern Illinois. Southern Illinois is not aware of when 4SEMO.com used a domain name that included the Southern Illinois Storm Shelter phrase to redirect consumers to 4SEMO.com's website or that it was done during the period in which they were an authorized dealer for Southern Illinois. Southern Illinois registered, owns and maintains        the        website        [www.lifesaverstormshelters.com](www.lifesaverstormshelters.com).        The southernillinoisstormshelters.com domain was registered on August 9, 2011 at the same time 4SEMO.com registered over 87 similar regionally descriptive names referencing geographic regions of other states. At all times that 4SEMO.com was using southernillinoisstormshelters.com, it was only used as a redirector, directing people to the 4SEMO.com website, which advertised the Southern Illinois products

it sold. At all times that 4SEMO.com used the redirector, it was authorized to sell, and were selling, Southern Illinois manufactured storm shelters. Southern Illinois never mentioned or complained about 4SEMO.com's use of the redirectors in any fashion before filing its amended complaint in this action because it had no knowledge of the use prior to the filing.

4SEMO.com sent out a form letter on or about May 28, 2013 to persons believed to be dealers of Southern Illinois who were using the Lifesaver Storm Shelters trademark because Southern Illinois had claimed they had the right to, and had, authorized such dealers to do so. Neubert Homes does not know when he last bought a storm shelter from Southern Illinois. Sidney Neubert voluntarily drove to the offices of counsel for Southern Illinois, in a rented car, obtained a hotel room and spent the night, and then agreed to give a deposition, all at his own expense and without any prior communication with Southern Illinois – saying he got a deposition notice in the mail, and simply packed up and drove at least six hours without any communication with anyone from Southern Illinois beforehand.

Southern Illinois dropped all claims for monetary damages for Counts 1 through 6 of the amended complaint and only seeks injunctive relief, if available. On June 4, 2013, Southern Illinois sent out a letter where it alleged that it was the owner of the Lifesaver mark, that Southern Illinois owned the Lifesaver mark for over 15 years, and that Southern Illinois had instituted legal actions against 4SEMO.com. Southern Illinois identified two dealers, "to the best of SISS knowledge", that allegedly breached contracts with Southern Illinois as a result of

the letter sent on May 28, 2013 entitled "Notification of Trademark Dispute Litigation", Dick Bragg Excavating and Brunk Excavating. Prior to the letter sent May 28, 2013, Brunk Excavating had only purchased three shelters, with the last one being nearly seven months earlier, and no evidence exists of any "termination" or "breach."

On January 19, 2014, Southern Illinois filed a memorandum in opposition to 4SEMO.com's motion to strike Southern Illinois' claim for damages, and stated that "although prayed for in the Amended Complaint, as discovery progressed in this case counsel for SISS has decided to drop its claims as to monetary damages related to trademark counts, and only seek equitable relief."

## Summary Judgment

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's

favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

## Analysis

"Congress passed the Lanham Act in 1946 to 'federalize" existing common law protection of trademarks used in interstate commerce. *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 672 (7th Cir. 2001). "The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the

defendant:

> [W]ithout the consent of the registrant … use[s] in commerce any
> reproduction, counterfeit, copy or colorable imitation of a registered
> trademark in connection with the sale, offering for sale, distribution,
> or advertising of any goods or services or in connection with which
> such use is likely to cause confusion, or to cause mistake, or to
> deceive.

15 U.S.C. § 1114(1)(a).   The Lanham Act further imposes liability upon:

> Any person who, or in connection with any goods or services … uses in
> commerce any … false designation of origin, false or misleading
> description of fact, or false or misleading misrepresentation of fact,
> which is likely to cause confusion or mistake, or to deceive as to the
> affiliation, connection, or other association of such person with
> another person, or as to origin, sponsorship, or approval of his or her
> goods … by another person.

15 U.S.C. § 1125(a)(1)(A).   The purpose of the trademark "is to provide the
consuming public with a concise and unequivocal signal of the trademarked
product's source and character."   *Draeger Oil, Inc. v. Uno-Ven, Co.*, 314 F.3d 229,
301 (7th Cir. 2002).   However, this "function is thwarted if the quality and the
uniformity of the trademarked product are allowed to vary significantly without
notice to the consumer."   *Id.*

4SEMO.com argues, inter alia, that it is entitled to summary judgment as (1)
Southern Illinois has no rights to the "Lifesaver" mark; (2) that Southern Illinois
has no rights in the purported "Southern Illinois Storm Shelters" phrase/mark; and
(3) even if Southern Illinois had protectable rights in the marks, 4SEMO.com was
permitted to use them because 4SEMO.com was an authorized dealer of Southern

Illinois.   Southern Illinois counters that there are genuine issues of material fact regarding both the Lifesaver mark and the Southern Illinois Storm Shelters' mark that preclude summary judgment.   Based on the following, the Court finds that 4SEMO.com is entitled to summary judgment on Counts 1 and 2 of the amended complaint.

First, 4SEMO.com asserts that it is entitled to summary judgment as Southern Illinois does not possess any enforceable rights in the Lifesaver Storm Shelter mark.   4SEMO.com argues that there is no evidence that LSS possessed a protectable mark in "Lifesaver."   Further, 4SEMO.com maintains that Southern Illinois cannot establish that its use of the mark was sufficient to establish ownership of the mark prior to 4SEMO.com's creation of the mark in 2005. Southern Illinois counters that LSS, LLC had rights in the mark and that Southern Illinois sufficiently used the mark as a regular part of its advertising and marketing plan prior to 4SEMO.com's creation.

In order to prevail on a claim of trademark infringement and counterfeiting under 15 U.S.C. § 1125(a)(1)(A), Southern Illinois must prove two elements.   *See* 15 U.S.C. § 1125(a); *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008). First, it must show that "its mark is protected under the Lanham Act."   *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000).   Second, the plaintiff must allege that the challenged mark is "likely to cause confusion among consumers." *Id.* However, "a court does not even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to

warrant a prima facie protection as a trademark." *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 610 (7th Cir. 1986).

A party may obtain "a protectable right in a trademark only through the use of the mark in connection with its product." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433-34 (7th Cir. 1999). The party seeking trademark right must show appropriation of the mark and "'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [the adopter of the mark].' " *Id.* at 433–34 (quoting *New West Corp. v. NYM Co. of Cal., Inc.,* 595 F.2d 1194, 1200 (9th Cir.1979)). "Only active use allows consumers to associate a mark with particular goods." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503-505 (7th Cir. 1992).

The law is clear that trademark rights exist only in connection with an existing business. *See United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed."); *Electro Source, LLC,* 458 F.3d at 939 ("Trademark use requires an existing business."). The registration of a mark with the USPTO does not alter this principle. *See Basile, S.p.A. v. Basile,* 899 F.2d 35, 37 n. 1 (D.C.Cir.1990) ("Although [a mark's] registration is a predicate to its protection under the Lanham Act, the underlying right depends not on registration but rather on use.").

Here, Southern Illinois has not set forth any evidence that LSS used

"Lifesaver" as a protectable mark.   There is no evidence that LSS used Lifesaver in relation to the consuming public or that the use was continuous.   There is no evidence that LSS used or placed the name directly on the storm shelters or how, when or where or if LSS did any advertising or marketing.   However, the evidence does reveal that LSS did use Lifesaver in the context of its corporate name which is insufficient to establish a protectable mark.   "The names of corporate, business and professional organizations are generally labeled 'trade names' as opposed to 'trademarks.'"   1 McCarthy on Trademarks § 9:3 (2002); 15 U.S.C. § 1127. Further, a "business name that is not used in a trademark sense in connection with the goods in question, is not registerable as a trademark."   1McCarthy on Trademarks 9:14.   Despite Southern Illinois' suggestion otherwise, the record reveals that LSS used its corporate name on business cards, letterhead and similar documents.   There is no evidence in these documents that that LSS considered the Lifesaver name as a trademark or that it identified its products as such. Thus, the Court finds that LSS did not have a protectable interest in the Lifesaver mark. Accordingly, summary judgment is appropriate.

Assuming *arguendo* that LSS did have a protectable mark, the Court agrees with 4SEMO.com and finds that Southern Illinois cannot prove ownership through abandonment.   LSS ceased all operations as of 2005 and Southern Illinois admits that from 2005 and 2012, LSS did not sell any storm shelters, did not disseminate any advertising, did not have any sales and did not use the phrase Lifesaver Storm Shelters for any purpose.   In response to this argument, Southern Illinois merely

states: "Regardless of whether any of these arguments have merit, SISS established a protectable mark through independent use of the Lifesaver mark prior to 4SEMO becoming a dealer and allegedly creating the name." (Doc. 134, p. 9).   Clearly, this is not sufficient to survive summary judgment based on ownership through abandonment.   Thus, the Court finds that Southern Illinois cannot prove ownership of the Lifesaver mark due to abandonment.

Next, 4SEMO.com argues that since Southern Illinois Storm Shelters is not a protectable mark, Southern Illinois cannot prevail on its claims based on 4SEMO.com's purported improper use.   Specifically, 4SEMO.com contends that Southern Illinois does not claim that it has a registered mark and the amended complaint states that the corporate name is registered as a business in the State of Illinois, thus, this is insufficient as a matter of law.   Southern Illinois counters that there are genuine issues of material fact that preclude summary judgment. Specifically, Southern Illinois argues that the evidence shows that Southern Illinois has used the Southern Illinois Storm Shelter name in commerce as more than just a business name and that the Southern Illinois Storm Shelter name is more than a descriptive identifier.

A mark is only entitled to protection under trademark law when "that mark specifically identifies and distinguishes one company's goods and services from those of competitors."   *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).   "The validity of a mark pertains to whether a 'word, term, name, symbol or device,' 15 U.S.C. § 1125(a)(1), is entitled

to protection under trademark law by focusing on whether that mark specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home Mortgage Corp. v. Platinum Financial Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). When the mark at issue is not registered with the United States Patent and Trademark Office, "the burden is on the claimant" to establish that it is entitled to protection. *Id.* at 727 (citing *Mil–Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1156 (7th Cir. 1996)).

Marks are classified into five categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Id.* (citing *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 767–68, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). The level of protection to which a mark is entitled depends on where it falls on the spectrum of distinctiveness, the least distinctive being the "generic" mark to the most distinctive being the "fanciful" mark. *Two Pesos, Inc.,* 505 U.S. at 768, 112 S.Ct. 2753. Generic marks are commonly used, do not identify a particular source and are entitled to no trademark protection. *Id.* Descriptive marks are those that describe "the ingredients, qualities, or characteristics of an article of trade or a service." *Id.* (quoting *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir .1986)). They do not generally receive trademark protection, but may if they acquire secondary meaning "in the collective consciousness of the relevant community." *Id.* (quoting *Mil–Mar Shoe Co.,* 75 F.3d at 1157). Finally, suggestive, arbitrary or fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed

Page **19** of **22**

inherently distinctive and are entitled to protection." *Two Pesos,* 505 U.S. at 768.

Secondary meaning arises when a mark "has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 641 (7th Cir. 2001). In determining whether a mark has acquired secondary meaning, the Seventh Circuit considers seven factors: (a) direct consumer testimony; (b) consumer surveys; (c) exclusivity, length and manner of use; (d) amount and manner of advertising; (e) amount of sales and number of customers; (f) established place in the market; and (g) proof of intentional copying. *Echo Travel, Inc. v. Travel Assocs., Inc.,* 870 F.2d 1264, 1267 (7th Cir.1989).

Here, the Court finds that Southern Illinois Storm Shelters is not a protectable trademark because it is merely a descriptive term; it is a corporate name that describes the geographic region from which the storm shelters are made. Despite Southern Illinois' assertions to the contrary, Southern Illinois has not pled or provided any evidence that would make the term be considered secondary to allow it protection.   Because the phrase Southern Illinois Storm Shelters is not a entitled to trademark protection, the Court finds that summary judgment is appropriate.

Next, 4SEMO.com argues that even if Southern Illinois had protectable rights in both of the marks, it is entitled to summary judgment on Counts 1 and 2 because it was an authorized distributor and reseller of Southern Illinois products.   The

Court agrees with 4SEMO.com.   As noted by the Report, Southern Illinois conceded this argument: "At the May 13, 2015 hearing, SISS stated affirmatively on the record that they withdraw any opposition to the argument that 4SEMO had the right to use the mark because they were an authorized dealer, which is reflected in the record at Doc. 113, p. 5, line 6 (item 3 in the list on that page).5   SISS also affirmatively agrees that the Court could grant summary judgment on this basis alone." (Doc. 147, p. 2).   Thus, based on Southern Illinois' concession, the facts contained in the record and the applicable law, the Court finds that summary judgment is proper also on this basis as to Counts 1 and 2.

Also, the Court finds that summary judgment is proper as to the monetary damages contained in Counts 1 and 2.   As stated previously, the Court struck Southern Illinois monetary damages since it did not produce any evidence of damages.

## Conclusion

Accordingly, the Court **GRANTS** 4SEMO.com's motion for summary judgment as to Counts 1 and 2 of Southern Illinois Storm Shelters' amended complaint (Doc. 111).   The Court finds in favor of 4SEMO.com, Inc., and against Southern Illinois Storm Shelters on Counts 1 and 2 of Southern Illinois Storm Shelters' amended complaint.   The Court **DIRECTS** the Clerk of the Court to enter judgment at the close of the case reflecting the same.   Further, the Court **DENIES**

---

5 Item 3 reads: "(3) even if SISS had protectable rights in the marks, 4SEMO was permitted to use them because 4SEMO was an authorized dealer of SISS," (Doc. 113, pg. 5).

**as moot** Southern Illinois Storm Shelters' motion to dismiss pursuant to Rule 41(a)(2) as to Counts 1 and 2 (Doc. 128).

The Court **SETS** this matter for final pretrial conference on February 10, 2016 at 1:30 p.m.   Lastly, the Court encourages the parties to contact Magistrate Judge Williams' chambers if another settlement conference would be beneficial.

**IT IS SO ORDERED.**

Signed this 26th day of August, 2015.

Digitally signed by
David R. Herndon
Date: 2015.08.26
16:13:33 -05'00'

**United States District Court**